

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
100 Pearl Street, Suite 20-100
New York, NY 10004-2616

New York
Regional Office

**VIA ECF**  September 6, 2024
The Honorable Andrew L. Carter, Jr.
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:      <u>SEC v. Silvergate Capital Corporation, et al., No. 24 Civ. 4987 (ALC) (S.D.N.Y.)</u>

Dear Judge Carter:

Plaintiff Securities and Exchange Commission ("SEC") respectfully responds to Defendant Antonio Martino's ("Martino") request for a pre-motion conference on his proposed motion to dismiss (D.E. 35, the "Letter"). Martino's proposed motion misapprehends the law, distorts the SEC's allegations, and is otherwise without merit.

Martino was the Chief Financial Officer ("CFO") of Silvergate Bank ("Silvergate") and its public holding company Silvergate Capital Corporation ("SCC"). The SEC's Complaint charges that Martino orchestrated a fraudulent scheme to hide from investors the true amounts of SCC's enormous securities sales and the resultant losses. Martino did so, in part, to conceal the impact of those losses on SCC's "Tier 1 Leverage Ratio" ("Tier 1"), a key financial metric for investors.

In late 2022, Silvergate faced a bank run fueled by a downturn in the crypto-asset markets, which forced SCC to take on massive amounts of debt and, in turn, repay this debt quickly by selling off securities at steep losses. Martino caused SCC to falsely report that it would sell just $1.7 billion in securities during the first quarter ("Q1") of 2023, knowing that, in fact, SCC more likely than not would be required to sell at least an additional $800 million—just to cover SCC's debt due in February 2023. Martino personally repeated these false statements publicly, when questioned by securities analysts during a January 2023 SCC earnings conference call. To cover up his fraud, Martino lied to Silvergate's primary federal regulator. He further falsified SCC's books and records and circumvented SCC's accounting controls.

**The Complaint adequately alleges false statements and material omissions**. Martino seeks dismissal by mischaracterizing false statements he made as opinions, and he compounds this error by incorrectly contending that the SEC must allege his subjective belief in their falsity. But the Complaint alleges that Martino made numerous false statements of objectively verifiable *facts*, not opinions, as well as material omissions. (Complaint (D.E. 1) at, *e.g.*, ¶¶ 244-46, 253-86.) In any event, a false opinion statement is actionable not only under a subjective disbelief standard but also when, as here, it "contains embedded statements of fact that are untrue, or the statement omits information whose omission conveys false facts about the speaker's basis for holding that view and makes the opinion statement misleading to a reasonable investor." *New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 171 (2d Cir. 2023) (internal citation omitted).

*First*, although Martino ignores it, the Complaint alleges that he caused SCC to state falsely in its January 17, 2023 earnings release that it had recorded "other than temporary impairment" ("OTTI")

for securities it "will more likely than not be required to sell." (¶¶ 244-46, 254-55, 267.) That statement—regarding the method that SCC purportedly used to calculate OTTI—was unquestionably one of fact. Moreover, Martino knew that the statement was false because SCC did not incorporate a "more likely than not" analysis to calculate OTTI for its earnings release. (¶¶ 238-46, 268.)

*Second*, Martino salted SCC's and his statements with material omissions, knowingly using a methodology to determine SCC's OTTI and securities sales that did not account for (1) customer deposits that fell by $1 billion in the first two weeks of 2023; (2) SCC's true upcoming debt repayments; (3) sales SCC already had made in 2023; and (4) the iterative effects of a shrinking balance sheet on OTTI. (*E.g.*, ¶¶ 217-36, 252, 262-66.)

*Third*, even if viewed as opinions, Martino's false statements about OTTI were fraudulent because he "did not hold the belief []he professed" and because opinion statements constitute fraud when "there is an accepted method for assessing whether the statement is true, but the statement is not justified by the accepted method and clearly contradicts the facts on which it purports to rest." *See New Eng. Carpenters*, 80 F.4th at 171. The Complaint alleges in detail how Martino—a Chartered Professional Accountant—did not believe SCC's and his statements to be true. Martino knew that Generally Accepted Accounting Principles ("GAAP") required SCC to record OTTI for any security in an unrealized loss position that SCC: (1) intended to sell; or (2) more likely than not would be required to sell. (¶¶ 176-78, 190-197). Furthermore, Martino knew that, as of December 2022, SCC owed billions in debt coming due in early 2023, and that GAAP required SCC to account for this debt in its OTTI calculations. (*E.g.*, ¶ 197.)[1] But Martino publicly stated on January 17, 2023 that SCC would sell only $1.7 billion of securities in Q1 2023—$1.5 billion of which it had already sold. (¶¶ 251, 270, 280-82.) He thus falsely implied to investors that SCC would sell only $200 million more in Q1. As Martino knew, however, SCC was more likely than not to be required to sell securities worth at least $800 million more just weeks later.

**The "bespeaks caution" doctrine is inapplicable.** Similarly, and contrary to Martino's argument, SCC's mere inclusion of general cautionary language in its public statements does not shield Martino from liability. *First*, the Complaint alleges false statements of present fact, *see supra*, which are "not covered by the [bespeaks caution] doctrine." *SEC v. Thompson*, 238 F. Supp. 3d 575, 603 (S.D.N.Y. 2017). *Second*, Martino's statements rested on facts that he knew were untrue or misleading at the time the statements were made, *see supra*, and, for this additional reason cannot be shielded by the doctrine. *See In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) ("The doctrine of bespeaks caution provides no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away."). *Third*, and in any event, the broad, boilerplate SCC warnings that Martino cites are insufficient to invoke the "bespeaks caution" doctrine because cautionary language insulates forward-looking statements only if the speaker "warns of the specific contingency that lies at the heart of the alleged misrepresentation." *Thompson*, 238 F. Supp. 3d. at 603. Yet, Martino points to no risk disclosure that warned investors specifically about the accuracy of SCC's OTTI calculations or methodology.

**The Complaint alleges materiality.** Martino's arguments about materiality will also fail because the Complaint includes allegations sufficient for a factfinder to conclude that his fraudulent scheme was material to reasonable investors. *See SEC v. Tecumseh Holdings Corp.*, 765 F. Supp. 2d 340, 349 (S.D.N.Y. 2011) ("A statement or omission is material if there is a substantial likelihood that a reasonable

---

[1] Martino disingenuously claims that GAAP *prevented* disclosure to investors of SCC'S future anticipated securities sales (Letter at 3); to the contrary, GAAP's OTTI guidance expressly *compelled* SCC to record OTTI when it was more likely than not that SCC would be required to sell (¶¶ 175-79, 209).

shareholder would consider it important or, in other words, there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable shareholder as having significantly altered the total mix of information available.") (citations omitted). "Because the materiality element presents a mixed question of law and fact, it will rarely be dispositive in a motion to dismiss." *Altimeo Asset Mgt. v. Qihoo 360 Tech. Co. Ltd.*, 19 F.4th 145, 150 (2d Cir. 2021) (citations omitted) (vacating order granting motion to dismiss). This case is no exception.

Martino argues that SCC's disclosure of layoffs, deposit flight in 2022, and other negative news render immaterial any false statements it might have made regarding Q1 2023 securities sales or OTTI. But Martino ignores the Complaint's well-pled allegations that his and SCC's false statements altered the total mix of material information available to investors. (¶¶ 257-88.) Indeed, during the January 17, 2023 earnings call, securities analysts who were following SCC asked specifically about its "decisions around selling securities," thus plainly implying their materiality. (¶¶ 280-88.) And SCC investors tracked Tier 1, which Martino knew could drop below the "well-capitalized" threshold—a blaring indicator of financial distress—if SCC properly recorded its OTTI. (¶¶ 198-206, 234-35, 287-88.)

Martino further argues that, because SCC reported on its balance sheet all unrealized losses regarding *all* its available-for-sale ("AFS") securities, he is somehow excused from false statement charges about OTTI. But the entire point of SCC assessing OTTI was to identify *specific* securities with unrealized losses that it *intended to, or was more likely than not to be required to*, *sell* and then to recognize those unrealized losses in the current period. (*See* ¶¶ 175-79.) Furthermore, SCC's unrealized losses on AFS securities did not affect Tier 1 until it actually sold those securities or assessed OTTI for them. Thus, instead of disclosing the truth about SCC's finances, Martino hid the impact of OTTI on Tier 1.

**The Complaint adequately alleges that Martino acted with scienter.** The SEC may prove scienter when a statement was "made with the intent to deceive, manipulate, or defraud…Scienter may be established through a showing of reckless disregard for the truth." *SEC v. Sourlis*, 851 F.3d 139, 144 (2d Cir. 2016). Although Martino argues otherwise, it is well-established that, in Commission enforcement proceedings, the elevated scienter pleading standards of the Private Securities Litigation Reform Act do not apply. *SEC v. Dunn*, 587 F. Supp. 2d 486, 499-502 (S.D.N.Y. 2008). Martino further argues that the false statements at issue involved "highly complex" judgments that prevented him from forming the requisite mental state. As shown above, however, Martino's false statements of fact are straightforward, and he understood the requirements of GAAP. Moreover, the Complaint further amply alleges Martino's scienter when he knew or recklessly disregarded that SCC would more likely than not have to sell at least $800 million more in securities than he told investors. (*E.g.*, ¶¶ 187-251.) *SEC v. Constantin*, 939 F. Supp. 2d 288, 308 (S.D.N.Y. 2013) ("Representing information as true while knowing it is not, recklessly misstating information, or asserting an opinion on grounds so flimsy as to belie any genuine belief in its truth, are all circumstances sufficient to support a conclusion of scienter.") (internal quotation omitted). [2]

---

[2] Finally, Martino contends that the SEC is not entitled to certain injunctive relief because "the Complaint … fails to allege—as required—a lack of adequate remedy at law or irreparable harm" (Letter at 4). This standard, however, is inapplicable to such relief. Under Section 20(b) of the Securities Act, and Section 21(d)(1) of the Exchange Act, the Court may order a permanent injunction against violations of the securities laws "where there has been a violation of the federal securities laws and there is a reasonable likelihood of future violations." *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 383 (S.D.N.Y. 2007). Furthermore, under Section 21(d)(2) of the Exchange Act, the Court may prohibit an individual from serving as an officer or director of a public company where the person has violated the anti-fraud provisions and "the person's conduct demonstrates unfitness to serve as an officer or director of any such issuer."

       Respectfully submitted,

       */s/ Hayden M. Brockett*
       Hayden M. Brockett
       Peter A. Mancuso
       Laura Meehan
       Trial Counsel
       *Counsel for Plaintiff SEC*