# EXHIBIT M

#320



**Office of Thrift Supervision**
Department of the Treasury

Thomas A. Barnes
*Assistant Deputy Director, Examinations, Supervision, and Consumer Protection*

1700 G Street, N.W., Washington, DC 20552 • (202) 906-5650

September 3, 2009

**MEMORANDUM FOR:**  CHIEF EXECUTIVE OFFICERS

**FROM:**  Thomas A. Barnes, Assistant Deputy Director
Examinations, Supervision, and Consumer Protection

**SUBJECT:**  **Accounting Considerations Related to Other-Than-Temporary Impairment of Securities**

On August 28, 2009, OTS issued guidance to the examiner and supervisory staff regarding accounting considerations related to other-than-temporary impairment of securities. The guidance issued to OTS staff is attached for your information.

If you have any questions about this or other matters, please do not hesitate to contact your OTS Regional office.

Attachment

**August 28, 2009**

**OTS Guidance to Examination Staff**
**Accounting Considerations Related to Other-Than-Temporary Impairment of Securities (Subsequent to adoption of FASB Staff Position FAS 115-2 and 124-2)**

**Executive summary**

The global financial crisis has seen the fair value [1] of many securities decline below their amortized cost basis [2] and thus those securities are impaired under *U.S. generally accepted accounting principles* (**GAAP**). Consequently, thrift management must assess whether the fair value decline represents a temporary or *other-than-temporary impairment* (**OTTI**). This assessment is important as it can directly affect the accounting treatment, impacting earnings and regulatory capital. In certain circumstances for *debt* securities, OTTI is separated into two components: (1) the credit loss amount, recognized in earnings; and (2) the amount related to all other factors (**non-credit loss**) recognized in other comprehensive income (**OCI**), net of applicable taxes.

- Under GAAP**,** when the fair value of an available-for-sale (**AFS**) or held-to-maturity (**HTM**) security is less than its amortized cost basis, it is impaired. The impairment is either temporary or other than temporary. Other than temporary does **not** mean permanent.
- At each TFR reporting date, thrift management, not the external auditor[3], must assess securities for impairment.
- Assessing OTTI is complex and involves significant judgment. There are no "bright lines"; each assessment depends on the specific facts and circumstances associated with the individual security and the thrift.
- The greater the decline in fair value and the longer the period of time the security has been impaired (commonly referred to as **severity and duration**), the more difficult it will be to support a conclusion that the impairment is not OTTI. Other important factors to consider are discussed later.
- Management of different thrifts might come to different OTTI conclusions for the same security as the fact patterns could differ for individual thrifts. Accordingly, examiners must evaluate all of the available evidence when reviewing management's documented OTTI conclusions.

---

[1] Under GAAP Fair Value Measurements and Disclosures (FASB ASC 820), fair value is the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date.
[2] Amortized cost basis includes adjustments made to the cost of an investment for accretion, amortization, collection of cash, previous other-than-temporary impairments recognized in earnings (less any cumulative-effect adjustments recognized in accordance with the transition provisions of FASB ASC 320-10-65), and fair value hedge accounting adjustments.
[3] The thrift's financial statements, which will reflect the results of the OTTI assessment, are the responsibility of management. The external auditor opines as to whether the financial statements (the financial position, results of operations, and cash flows) are fairly presented, in all material respects, in accordance with GAAP.

**2009 FASB issuances**
The most significant 2009 issuances from the *Financial Accounting Standards Board* (**FASB**) include the following impairment standards:
- January 12, 2009 – *FASB Staff Position* (**FSP**) Emerging Issues Task Force (**EITF**) 99-20-1, *Amendments to the Impairment Guidance of EITF Issue No. 99-20 (***FSP EITF 99-20-1***)*; and
- April 9, 2009 – FSP *Financial Accounting Standards* (**FAS**) 115-2 and FAS 124-2, *Recognition and Presentation of Other-Than-Temporary Impairments* (**FSP FAS 115-2**).

On June 3, 2009, the FASB approved the *FASB Accounting Standards Codification™* (**FASB ASC**) effective for financial statements for interim or annual reporting periods ending after September 15, 2009. OTTI accounting standards are in *FASB ASC 320 Investments – Debt and Equity Securities, 10 Overall, 35 Subsequent Measurement* (FASB ASC 320-10-35); and *FASB ASC 325 Investments – Other, 40 Beneficial Interests in Securitized Financial Assets* (FASB ASC 325-40). Both the superseded and codified accounting standard references are provided below for convenience.

The above standards substantially amends the two accounting models used for assessing OTTI:

A. *FSP FAS 115-1/FASB ASC 320-10-35* **(Investment security model)** is the general model that applies to debt and equity securities, as well as cost method investments[4].

B. *EITF 99-20/FASB ASC 325-40* **(Beneficial interest model)** is the specialized model that is applied to a subset of debt securities which are beneficial interests in securitized financial assets that: (1) are *not* of "high credit quality" (with high credit quality interpreted as included in the rating agencies' top two investment grades, e.g. AAA or AA), **or** (2) can be contractually prepaid in such a manner that substantially all of the recorded investment would not be recovered. Examples include interest-only strips or the residual interest in a securitization. Note that these investments are **also** subject to the Investment security model.

**Simplified example of a debt security**
Thrift A and Thrift B each purchase $100 of debt security XYZ at the same time and unit price. Subsequently, Thrift A decides to sell the security, while Thrift B has no intent to sell the security nor is it "more likely than not" that Thrift B will be required to sell the security. At the June 30, 2009 reporting date, the security is impaired by $40 (amortized cost basis equals $100 less fair value of $60). The $40 total impairment consists of $10 of estimated credit loss and $30 of estimated non-credit loss. For reporting purposes, Thrift A recognizes the entire impairment of $40 in earnings as management "intends to sell" the security. Thrift B recognizes the credit loss of $10 in earnings and the non-credit loss of $30 in OCI. So, although both thrifts have impairment of the security that is considered OTTI, the accounting treatment differs because the facts and circumstances differ for each thrift.

---

[4] "Cost-method investments" are equity securities that are not subject to the scope of FASB ASC 320 (Investments – Debt and Equity Securities) and FASB ASC 958 (Not-For-Profit Entities) and not accounted for under the equity method pursuant to FASB ASC 323 (Investments – Equity-Method and Joint Ventures) and related interpretations.

**OTTI matrix** (prepared by the Office of Thrift Supervision)
The OTS matrix below outlines the key questions to assess OTTI whenever the fair value of a security is less than its amortized cost basis.

| DEBT SECURITY | | | |
|---|---|---|---|
| **Investment security model** | | | |
| **(1) Intends to sell or (2) "more likely than not" will be required to sell before recovery of its amortized cost basis?** | **Are credit losses expected?** (i.e., Is the PV of CF expected to be collected < the amortized cost basis?) | **Impairment: Temporary or OTTI?** | **Accounting** |
| **No** | **No** | **Temporary** | Report AFS at fair value through OCI and HTM at cost |
| **No** | **Yes** | **OTTI** | OTTI separated:<br>• credit loss in earnings<br>• non-credit loss in OCI |
| **Yes** | **N/A** | **OTTI** | Recognize entire impairment loss in earnings. |
| **Beneficial interest model[5]** | | | |
| **Does holder (1) intend to sell or (2) is it "more likely than not" holder will be required to sell before recovery of its amortized cost basis?** | **Yes** | Recognize entire impairment loss in earnings. | |
| | **No** | Follow assessment under the Beneficial interest model below. | |
| **Is there an adverse change in the timing or amount of cash flows expected to be collected? (May indicate expected credit loss.)** | | **Impairment: Temporary or OTTI?** | **Accounting** |
| **No** | | **Temporary** | Report AFS at fair value through OCI and HTM at cost |
| **Yes** | | **OTTI** | OTTI separated:<br>• credit loss in earnings<br>• non-credit loss in OCI |
| **EQUITY SECURITY** | | | |
| **Investment security model** | | | |
| **Intent and ability to hold to recovery of cost basis?** | | **Impairment: Temporary or OTTI?** | **Accounting** |
| **Yes** | | **Temporary** | Report AFS at fair value through OCI |
| **No** | | **OTTI** | Recognize entire impairment loss in earnings |

---

[5] Only used for certain beneficial interests in securitized financial assets within scope of FASB ASC 325-40 model (see page 2, item B).

Page 3 of 16



**OTTI flowchart - Investment security & Beneficial interest models (debt & equity securities)**
**(Prepared by the Office of Thrift Supervision)**

This bulletin covers the following topics:
A.  Assessing OTTI of investment securities;
B.  Supervisory expectations;
C.  Authoritative references; and
D.  Appendix.
- Application of GAAP with different types of securities;
- Scope of FASB ASC 325-40 (*Beneficial Interests in Securitized Financial Assets*); and
- Forward contracts and purchased options.

## A.  Assessing OTTI of investment securities

There are 3 key steps in assessing OTTI:
  **Step 1** - Determine whether an investment is impaired.
  **Step 2** - Evaluate whether impairment is temporary or other than temporary.
  **Step 3** - If impairment is other than temporary, recognize an impairment loss.

### Step 1: Determine whether an investment is impaired.

If the fair value of the security is less than its amortized cost basis, it is impaired.  A thrift shall determine whether an AFS, HTM, or cost-method investment[6] is impaired at the end of each quarter (TFR reporting period).  A thrift should **not** "look through" the form of its investment; for example, an investment in a mutual fund that invests only in debt securities is assessed for OTTI as an equity security, not as a debt security.

Impairment shall be assessed at the individual security level.  Individual security level means the level and method of aggregation used by the thrift to measure realized and unrealized gains and losses on its debt and equity securities.  For example, equity securities of an issuer bearing the same Committee on Uniform Security Identification Procedures [CUSIP] number that were purchased in separate trade lots may be aggregated by a thrift on an average cost basis if that corresponds to the basis used to measure realized and unrealized gains and losses for these securities.

If the investment is impaired, proceed to Step 2.

---

[6] If the thrift **has** estimated the fair value of a cost-method investment, the estimated fair value shall be used to determine if the investment is impaired for the reporting periods in which the thrift estimates fair value.  If the thrift has **not** estimated the fair value of a cost-method investment, evaluate whether an event or change in circumstances has occurred in that reporting period which may have a significant adverse effect on the fair value of the investment (an "impairment indicator") (FASB ASC 320-10-35-25).  If an impairment indicator is present, then estimate the fair value of the investment, and if less than its cost basis, the investment is impaired; proceed to Step 2 of Section A in body of text.  Impairment indicators (FASB ASC 320-10-35-27) include, but are not limited to, the following:
a. A significant deterioration in the earnings performance, credit rating, asset quality, or business prospects of the investee.
b. A significant adverse change in the regulatory, economic, or technological environment of the investee.
c. A significant adverse change in the general market condition of either the geographic area or the industry in which the investee operates.
d. A bona fide offer to purchase (whether solicited or unsolicited), an offer by the investee to sell, or a completed auction process for the same or a similar security for an amount less than the cost of the investment.
e. Factors that raise significant concerns about the investee's ability to continue as a going concern, such as negative cash flows from operations, working capital deficiencies, or noncompliance with statutory capital requirements or debt covenants.

## Step 2: Evaluate whether the impairment is temporary or other than temporary.

The impairment is either temporary or other than temporary as determined through evaluation under the two accounting models, investment security or beneficial interest model, as appropriate. The evaluation is discussed below.

## Debt securities
**Investment security model**
- *Scope* – This model applies to any investment security classified as HTM or AFS that meets the definition of a debt security under GAAP. These securities represent a creditor relationship and generally include:
    - U.S. Treasury securities, U.S. government agency securities, municipal securities, corporate bonds, convertible debt, commercial paper, all securitized instruments (e.g., CMOs, REMICs, CDOs), interest-only strips, and principal-only strips.
    - Trust preferred securities and pooled trust preferred securities (CDOs).
    - Certain *non-security* financial instruments accounted for under FASB ASC Transfers and servicing (FASB ASC 860.) Examples include interest only strips, retained interests in securitizations, loans, and other receivables or other financial assets that can be contractually prepaid or otherwise settled in such a way that the holder would not recover substantially all of its recorded investment.
- *Impairment* (e.g., decline in fair value below amortized cost basis, which might occur as a result of a change in interest rates, market illiquidity, or credit quality) is OTTI if:
  (1) Management intends to sell the security, or
  (2) It is "more likely than not" that the thrift will be required to sell the security before recovery of its amortized cost basis, or
  (3) The thrift does not expect to recover its entire amortized cost basis in the investment security (credit loss).
- *Severity and duration* - The time horizon for recovery of a debt security's cost basis may be as far out as maturity, provided it is expected that all the cash flows will be received according to the contractual terms of the agreement. Under FASB ASC 320-10-35 "the length of time and the extent to which the fair value has been less than the amortized cost basis" needs to be considered (i.e., severity and duration) when evaluating whether a security is OTTI. Generally, the longer the period of time and greater the amount of decline in value, the more likely a security is OTTI. However, a decline in value due to expected credit losses may occur within a short period of time if the issuer of the security or underlying collateral of an asset-backed investment has experienced significant credit or value deterioration, with or without a payment default. On the other hand, a security that has a decline in value for more than a year may fully recover (e.g., pull to par at maturity). Any decision to sell a depreciated security prior to full recovery of its cost basis results in the recognition of an immediate loss at the time the *decision to sell* is made. Each security should be assessed based on its individual facts and circumstances as well as the plans and requirements of the thrift.

- There are numerous *additional factors* to be considered when estimating whether a credit loss exists and the period over which the debt security is expected to recover. The FASB ASC 320-10-35-33F list is not meant to be all inclusive. All of the following factors shall be considered:
    a. The length of time and the extent to which the fair value has been less than the amortized cost basis (see severity and duration discussion above).
    b. Adverse conditions specifically related to the security, an industry, or geographic area; for example, changes in the financial condition of the issuer of the security, or in the case of an asset-backed debt security, changes in the financial condition of the underlying loan obligors. Examples of those changes include any of the following:
        1. Changes in technology.
        2. The discontinuance of a segment of the business that may affect the future earnings potential of the issuer or underlying loan obligors of the security.
        3. Changes in the quality of the credit enhancement.
    c. The historical and implied volatility of the fair value of the security.
    d. The payment structure of the debt security and the likelihood of the issuer being able to make payments that increase in the future.
    e. Failure of the issuer of the security to make scheduled interest or principal payments.
    f. Any changes to the rating of the security by a rating agency.
    g. Recoveries or additional declines in fair value after the balance sheet date.
- A *credit loss* exists if the thrift determines that the present value of the cash flows expected to be collected is lower than the amortized cost basis.
    o For FASB ASC 320-10 debt securities one way of estimating the credit loss is to use the methodology applicable to receivables as described in FASB ASC 310-10-35. Under this methodology, a thrift discounts the cash flows management expects to collect at the effective interest rate implicit in the debt security when acquired. The OTS also will permit other reasonable measurement methodologies for the determination of credit loss that are consistent with GAAP. Any shortfall between the present value calculation and the debt security's amortized cost basis is a credit loss recognized through earnings.
    o For debt securities acquired with deteriorated credit quality within FASB ASC 310-30, credit losses (if any) are estimated as the excess of the amortized cost basis over the present value of cash flows management expects to collect, discounted at the accretable yield rate.
- For securities in the scope of the Beneficial interest model:
    o If the investor intends to sell the security or it is "more likely than not" it will be required to sell:
        ▪ The security is OTTI (under the Investment security model) and should be written down to fair value through earnings.
    o If the investor does not intend to sell the security and it is not "more likely than not" it will be required to sell:
        ▪ The securities should be evaluated for OTTI under the Beneficial interest model below.
- If OTTI, then proceed to Step 3.

Page 7 of 16

**Beneficial interest model**
- *Scope*
  - For securities in the scope of the Beneficial interest model where the investor does not intend to sell and it is not more likely than not that the investor will be required to sell, then evaluate using this model.
  - This model is used for beneficial interests classified as HTM or AFS that are either:
    - Not "high credit quality" ("high credit quality" is interpreted as included in the rating agencies' top two investment grades, e.g. AAA or AA), or
    - Can be contractually prepaid such that the thrift would not recover substantially all of its recorded investment.
- Determine whether there has been an adverse change in cash flows expected to be collected, when compared to the cash flows previously projected.
- Using management's best estimate of cash flows expected to be collected, *if* (a) the present value of the *original* estimate of remaining future cash flows expected to be collected at the initial transaction date (or the last date previously revised) *is greater than* (b) the present value of the *current* estimate of future cash flows expected to be collected, (with both (a) and (b) discounted at the current yield used to accrete income on the beneficial interest), *then* the change is considered adverse and the impairment is OTTI; proceed to Step 3.

## Equity securities

*Scope* – This model applies to any investment security classified as AFS [7] that meets the definition of an equity security under GAAP. These securities represent an ownership interest and generally include:
- Common, preferred, or other capital stock,
- The right to acquire (for example, warrants, rights, and call options) or dispose of (for example, put options) an ownership interest in an entity at fixed or determinable prices, and
- Mutual funds, including mutual funds who invest only in debt securities.

The term equity security does not include any of the following:
- Written equity options (because they represent obligations of the writer, not investments),
- Cash-settled options on equity securities or options on equity-based indexes (because those instruments do not represent ownership interests in an entity), or
- Convertible debt or preferred stock that by its terms either must be redeemed by the issuing entity or is redeemable at the option of the investor.

Stock in the Federal Home Loan Banks (FHLB) is an equity security; however, the assessment of impairment[8] is outside the scope of this bulletin (FASB ASC 942-325-35-3).

---

[7] Equity securities have no stated maturity and therefore may not be classified as HTM.

[8] Several white papers on considerations for evaluating OTTI of FHLB stock have been produced and are available at OTS intranet: Other-than-temporary impairment guidance.

Both public and non-public thrifts shall apply SEC guidance codified as FASB ASC 320-10-S99-1, *Other Than Temporary Impairment of Certain Investments in Equity Securities*; and other applicable authoritative literature in assessing impairment. Factors to be considered include:
- "intent and ability to hold for any anticipated recovery in [fair value]," and
- "the length of time and extent to which the [fair] value has been less than cost" (i.e., severity and duration).

In assessing whether an equity security is OTTI, all available evidence should be considered, both positive and negative. The following facts and guidelines may assist in determining whether an OTTI exists:
- When a large number of negative factors exist and they outweigh positive factors, this would indicate that OTTI exists.
- If positive factors, which are cited as reasons that an OTTI does not exist, are more objectively verifiable than negative factors, the evidence may support a conclusion that the impairment is temporary.

The longer and the more severe the decline in fair value of the security, the more persuasive the evidence that is needed to support the premise that it is not OTTI. While there are no bright lines, it is difficult to conclude that an impairment of an equity security is not OTTI when the security has been impaired for a period of time longer than 6 to 9 months, the amount of the impairment is significant, and, importantly, market information indicates the prospects for recovery in the near-term are unlikely. For example, reliance on a 24-month recovery period may be overly speculative as it relies principally on the thrift's ability to predict the future direction of market prices for an equity security over an extended period of time. For an equity security, if the near-term (i.e., the next 6 to 9 months) prospects for recovery are unlikely, persuasive, but not conclusive, evidence exists that the impairment is generally considered OTTI.

When a thrift decides to sell an impaired available-for-sale equity security and the thrift does not expect the fair value of the equity security to fully recover prior to the expected time of sale, the security is deemed OTTI at the time that the *decision to sell* is made. If OTTI, proceed to Step 3.

**SEC letter on impairment testing of perpetual preferred securities**
Perpetual preferred securities are generally classified as equity securities on the issuer's balance sheet, as they do not have a contractual maturity date (note that the fact that a security may be "called" at the option of the issuer does not provide a basis to assert that the call provision is the same as a contractual cash flow at maturity). However, in a U.S. Securities and Exchange Commission (SEC) staff letter[9] to industry, the SEC staff concluded that:
- *Provided* that there has been no evidence of a deterioration of credit of the issuer (for example, a decline in the cash flows from holding the investment or a downgrade of the rating of the security below investment grade),
- The SEC would not object to an investor, only for purposes of impairment tests subsequent to October 14, 2008, applying an impairment model (including an anticipated recovery period) similar to a **debt** security until this matter can be further addressed[10] by the FASB.

---

[9] Letter from Conrad Hewitt, SEC Chief Accountant, to Robert Herz, FASB Chairman, concerning the assessment of declines in fair value for perpetual preferred securities under the existing other-than-temporary impairment model in FAS No. 115, *Accounting for Certain Investments in Debt and Equity Securities*. (October 14, 2008).http://www.sec.gov/info/accountants/staffletters/fasb101408.pdf

[10] As of the issuance of this bulletin the SEC and the FASB have not further addressed this issue. Examiners should contact their Regional Accountant if they have questions on this matter.

## Step 3: If OTTI, recognize an impairment loss as follows:

### <u>Debt security</u>
### Investment security model

- If a thrift (1) does **not** intend to sell the debt security, **and** (2) it is **not** "more likely than not" that the thrift will be required to sell the security before recovery of its amortized cost basis less any current-period credit loss, the OTTI shall be divided into two elements and reported as follows:
    a. The credit loss amount (the excess of amortized cost over the present value of cash flows expected to be collected) shall be recognized in earnings using an appropriate calculation methodology:
        - For FASB ASC 320-10 debt securities, discount the cash flows expected to be collected at the *original* effective interest rate at the date of acquisition (described in FASB ASC 310-10-35-20 through 35-29).
        - For FASB ASC 310-30 debt securities acquired with deteriorated credit quality, discount the cash flows expected to be collected at the *current* accretable yield (described in FASB ASC 310-30-35-8).
        
        For FASB ASC 325-40 Beneficial Interests refer to the Beneficial interest model section below.

    b. The amount related to other factors (non-credit loss) shall be recognized as a component of OCI, net of applicable taxes.

    *Note:* For financial reporting purposes, the OTTI amounts are presented in the statement of earnings as follows (amounts are for illustrative purposes only):

    | | | |
    |---|---:|---|
    | Total other-than-temporary impairment losses | ($10,000) | (total FV loss) |
    | Portion of loss recognized in other comprehensive income (before taxes) | $4,000 | (non-credit loss) |
    | Net impairment losses recognized in earnings | ($6,000) | (credit loss) |

- However, if a thrift (1) intends to sell the security or (2) it is "more likely than not" will be required to sell the security before recovery of its amortized cost basis less any current-period losses, the OTTI shall be recognized in earnings equal to the entire difference between the security's amortized cost basis and its fair value at the balance sheet date.

### Beneficial interest model

- Similar to impairment recognition in the Investment security model, except the credit loss amount is determined based on discounting the cash flows expected to be collected using the yield currently used to accrete the beneficial interest (described in FASB ASC 325-40-35-4b), rather than the original effective interest rate (described in 310-10-35-20 through 35-29).

**Equity security**
**Investment security model**
- Recognize an impairment loss in earnings equal to the entire difference between the security's amortized cost basis and its fair value.

## B. Supervisory expectations

Thrift management is responsible for assessing and documenting quarterly, whether each impaired security is OTTI under GAAP. The thrift's Board of Directors is ultimately responsible for ensuring that the assessment has been completed in a timely manner and that the assessment is reasonable. Reporting systems should be in place which monitor the severity and duration of securities impaired on an instrument-by-instrument basis. Management should have detailed written policies which state the criteria that lead to the rebuttable presumption that OTTI exists. Robust, documented evidence should support conclusions that impaired securities are not OTTI. Thrift management is also responsible for ensuring that there are robust processes for ensuring that security valuations are consistent with FASB ASC 820, *Fair Value Measurements and Disclosures* (FASB ASC 820).

Examiners should review and conclude on the adequacy, timeliness, and accuracy of the following practices:
- The fair value methodology and compliance with FASB ASC 820.
- The process used to evaluate individual securities in accordance with FASB ASC 320-10-35, and FASB ASC 325-40, as applicable.
- Management's policies and procedures to identify securities with potential OTTI.
- Documentation supporting temporary or OTTI determinations.

Thrift management may deem it appropriate to use pre-determined parameters, for example, based on the relationship of current fair value to cost basis, as a management tool to assist with prioritizing and determining the extent of the analysis to be performed to determine whether impairments are considered other than temporary. All securities with unrealized losses should be systematically reviewed each reporting period to determine whether an OTTI should be recognized. Declines in fair value that are significant but of short duration, or less significant but of a longer duration, may be indicators of OTTI. Note that the two examples of pre-determined parameters below are included <u>for illustration purposes only</u> and are not intended to be either requirements or safe harbors. Securities that fall within the predetermined parameters should be reviewed in greater detail to assess whether based on the facts and circumstances they are OTTI or not OTTI.
- Any security that is impaired by 7 percent or more for two consecutive quarters or any amount for twelve consecutive months.
- Any debt security, other than one backed by the full faith and credit of the U.S. government, that is impaired by greater than 10 percent or impaired by any amount for six consecutive months.

Appropriate documentation for examiners to review should include, but is not limited to:

**Internal**
- An analysis of the security's cost basis and fair value.
- The severity (dollar amount and percentage) and duration of the impairment.
- Investments as a percentage of assets, when considering examination scope.
- Impairment as a percentage of regulatory capital, when considering examination scope.
- Key components in the security's terms or structure that affect its fair value.
- Internal auditors OTTI review, if any.

**External**
- The financial performance of the issuer.
- The financial performance of the underlying collateral.
- The security's or issuer's credit rating, as applicable.
- Trends in the issuer's industry or underlying asset classes.
- Analyst reports, if available.
- External auditors OTTI review.

**Disclosures**
- The FASB ASC 825-10-50, *Financial Instruments, Overall, Disclosure.*
- The FASB ASC 320-10-50, *Investments – Debt and Equity Securities, Overall, Disclosure*.

Thrift management support includes its:
- Accounting and reporting policy for OTTI.
- OTTI analysis and the date performed.
- Expectations about the security's future performance based on the information available.
- Representations (preferably in writing) that they do not intend to sell and will not "more likely than not" be required to sell impaired securities prior to expected recovery, where appropriate.

Examiners should consider the thrift's business and liquidity plans as well as prior and contemplated transactions when assessing management's representations.

The determination that an investment security is OTTI has the following impact on GAAP equity and regulatory capital:

| Debt (HTM and AFS) | GAAP equity | Regulatory capital |
|---|---|---|
| Losses in earnings | Reduces | Reduces |
| Non-credit losses in other comprehensive income | Reduces | *No impact/ "neutralized"* |
| **Equity (AFS and cost method investments)** | **GAAP equity** | **Regulatory capital** |
| Losses recorded in earnings | Reduces | Reduces |
| Losses in other comprehensive income | Reduces | Reduces |

| **OTTI and Regulatory Capital – Illustration** | | | |
|---|---|---|---|
| Assume investment security with: | | | |
| Amortized cost | | | $500 |
| Credit losses | | $30 | |
| Non-credit losses | | $20 | |
| Total impairment | | $50 | ($50) |
| Fair value | | | $450 |

*Note: Credit and non-credit losses only apply to debt securities.*

| | | Debt Intend to sell? | |
|---|---|---|---|
| | **Equity** | **Yes** | **No** |
| GAAP capital, before OTTI | $1,000 | $1,000 | $1,000 |
| Deduct total OTTI impairment | ($50) | ($50) | ($50) |
| GAAP capital, after OTTI | $950 | $950 | $950 |
| Add non-credit OTTI losses* | N/A | N/A | $20 |
| Regulatory capital subtotal | $950 | $950 | $970 |

*In OCI and AOCI*

Examiners should advise management of any weaknesses or deficiencies in its OTTI policies and procedures and encourage management to consult with its external auditors, as necessary, in order to cure the identified weaknesses and deficiencies.  Unresolved material differences between examiners and thrift management on OTTI assessments should be communicated to thrift senior management and/or board of directors, external auditors, OTS caseload supervisors, and the Regional Accountant, as appropriate.

## C. References

- FASB ASC 320, *Investments-Debt and Equity Securities 10 Overall 35 Subsequent Measurement (***FASB ASC 320-10-35***)*, formerly:
    - FASB Statement No. 115, *Accounting for Certain Investments in Debt and Equity Securities* (**FAS 115**),
    - FASB Staff Position FAS 115-1 and FAS 124-1, *The Meaning of Other Than Temporary Impairment and Its Application to Certain Investments* (**FSP FAS 115-1**) and
    - FASB Staff Position FAS 115-2 and FAS 124-2, *Recognition and Presentation of Other-Than-Temporary Impairments* (**FSP FAS 115-2**)
- FASB ASC 325-40, *Beneficial Interests in Securitized Financial Assets* (**FASB ASC 325-40**), formerly:
    - EITF 99-20, *Recognition of Interest Income and Impairment on Purchased and Retained Beneficial Interests in Securitized Financial Assets* (**EITF 99-20**) and
    - FASB Staff Position EITF 99-20-1, *Recognition of Interest Income and Impairment on Purchased and Retained Beneficial Interests in Securitized Financial Assets* (**FSP EITF 99-20-1**)
- FASB ASC 820, *Fair Value Measurements and Disclosures* (**FASB ASC 820**), formerly:
    - FASB Statement No. 157, *Fair Value Measurements* (**FAS 157**)
- FASB ASC 310-30, *Loans and Debt Securities Acquired with Deteriorated Credit Quality* (**FASB ASC 310-30**)*, formerly:*
    - Statement of Position 03-3, *Accounting for Certain Loans and Debt Securities* (**SOP 03-3**)
- SEC Staff Accounting Bulletin SAB Topic 5.M, *Other than Temporary Impairment of Certain Investments in Equity Securities* (**FASB ASC 320-10-S99-1**), also know as
    - SEC Staff Accounting Bulletin No. 111 (Topic 5M) *Other Than Temporary Impairment of Certain Investments in Equity Securities* (**SAB 111**)
    http://www.sec.gov/interps/account/sab111.htm
- SEC Office of the Chief Accountant and FASB Staff – *SEC Office of the Chief Accountant and FASB Staff Clarifications on Fair Value Accounting*. Refer to section titled: *What factors should be considered in determining whether an investment is other-than-temporarily impaired?* http://www.fasb.org/news/2008-FairValue.pdf
- *AICPA Statement on Auditing Derivative Instruments, Hedging Activities, and Investments in Securities* (**SAS 92**)
  http://www.aicpa.org/download/members/div/auditstd/AU-00332.PDF
- AICPA TPA# 21.30 *Application of SOP 03-3* (**TPA 03-3**)
  http://www.aicpa.org/download/acctstd/TPA_03-3.pdf
- 2004 *Uniform Agreement on the Classification of Assets and of Securities Held by Banks and Thrifts* (**CEO Letter # 200**)
- Audit firms other-than-temporary impairment literature. OTS intranet: Other-than-temporary impairment guidance

# D. Appendix

The table below illustrates the application of GAAP for different types of securities:

| Type | FASB ASC 320-10-35 In Scope? | FASB ASC 325-40 In Scope? | Model(s) |
|---|---|---|---|
| **DEBT SECURITIES** | | | |
| All investments in AFS and HTM debt securities | Yes | No | 1. Investment security model |
| Certain non-consolidated beneficial interests not of "high credit quality" or pre-payable at less than cost basis | Yes | Yes | 1. Investment security model<br>2. Beneficial interest model, if do not intend to sell or not "more likely than not" will be required to sell |
| **EQUITY SECURITIES** | | | |
| Most investments with readily determinable fair values (excludes cost method investments) | Yes | No | 1. Investment security model |
| Cost-method investments[6] | Yes | No | |

**Scope of FASB ASC 325-40,** *Beneficial Interest in Securitized Financial Assets*
Included in the scope are all asset backed securities (ABS), collateralized debt obligations (CDOs) and residential and commercial mortgage-backed securities (RMBS or CMBS) **not** guaranteed by the U.S. government or its agencies, or **not** sufficiently collateralized to ensure that there is a remote possibility of credit loss (i.e., principal and/or interest).

Excluded from the scope are securities that meet both of the following criteria:

- The security is of "high credit quality" (interpreted as included in the rating agencies' top two investment grades, e.g. AAA or AA); **and**
- The security cannot be contractually prepaid or otherwise settled in such a way that the holder would not recover substantially all of its recorded investment.

The SEC has indicated that it is acceptable to determine whether a security is within this scope: (1) at acquisition only, or (2) at acquisition and on an ongoing basis, i.e. evaluate at each period end. These are the two most common approaches. For example, a thrift could consider a debt security that was AAA rated at acquisition as scoped out even upon a subsequent credit rating downgrade to BBB because the scope determination was made at acquisition only. Alternatively, a thrift could evaluate each security at each quarter-end to determine if it currently would be within the scope based upon its current credit rating. Thrifts should specify in their accounting policies which scope determination method is used.

**Forward contracts and purchased options**
Changes in the fair value of forward contracts and purchased options to acquire investment securities (under FASB ASC 320) that are not derivatives (under FASB ASC 815), such as one that is not readily convertible to cash, must be recognized immediately in earnings or OCI, subject to an OTTI assessment. The determination of where to record changes in fair value (in earnings or OCI) is based on the designation of the underlying asset as HTM, AFS, or Trading (FASB ASC 815-10-35-5).