**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| **U. S. SECURITIES AND EXCHANGE COMMISSION,**<br><br>                         **Plaintiff,**<br><br>        **-against-**<br><br>**ANTONIO MARTINO**<br><br>                      **Defendant.** | **24 Civ. 04987 (ALC) (SDA)** |

## STIPULATED PROTECTIVE ORDER

Upon stipulation of the parties pursuant to Section 9 of the Civil Case Management Plan (D.E. 62), the Court enters this stipulated Protective Order for the purpose of assuring the confidentiality of certain information that will be disclosed by the parties and non-parties during the course of this proceeding.

1.      As used in this Order:

    a.      The term "Action" means the above-captioned litigation.

    b.      The terms "Party" and "Parties" mean one or more parties to the Action and their counsel.

    c.      The terms "Document" or "Documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "document" in Local Civil Rule 26.3(c)(2).

    d.      The term "Protected Person" means any non-party person or entity, its employees, management, agents, attorneys, and all other persons acting or purporting to act on its behalf, who produces any Document or other information containing or constituting Sensitive Information or Confidential Information.

e.    The term "Sensitive Information" means any Document or other information containing any one or more of the following categories of information: (i) a social security or tax identification number; (ii) the birth date of any individual person; (iii) the name of any individual person who, at the time of the filing of the Complaint in the Action, was known to be less than 18 years old; (iv) individual persons' or entities' financial account numbers; and (v) the home address of an individual person.

f.    The term "Confidential Information" means any Document or other information believed by the producing Party or Protected Person to contain any one or more of the following categories of personal, private, or proprietary information that the producing Party or Protected Person has maintained as confidential and that are not otherwise lawfully available to the general public or already available in the public domain: (i) a personal identifying number of an individual person other than that already constituting Sensitive Information; (ii) an individual person's medical records, including information regarding treatment and diagnosis; (iii) an individual person's employment history; (iv) an individual person's financial information other than that already constituting Sensitive Information; (v) proprietary or trade secret information; (vi) information regarding an individual person's cooperation with the government; (vii) information that, if disclosed, would invade an individual's personal privacy; (viii) and information otherwise protected from public disclosure by federal or state law, including but not limited to, confidential supervisory information (also known as "CSI") belonging to the Board of Governors of the Federal Reserve System (the "FRB") pursuant to 12 C.F.R. § 261.2(b)(1) or the California Department of Financial Protection and Innovation (the "DFPI") pursuant to the Cal. Fin. Code § 159.

g.    The term "Discovery Material" means any Document or other information of any kind produced or disclosed pursuant to and during the course of discovery in the Action.

2.      Sensitive Information or Confidential Information produced or disclosed to the Parties during the course of the Action:

a.      Shall be used by the Parties only for purposes of the Action, including any appeal or enforcement of any order or judgment entered in the Action;

b.      Shall not be used by the Parties for any business or commercial purpose;

c.      Shall be returned to the producing Party or Protected Person, or destroyed, within 30 days after the conclusion of this Action, including all copies and electronically stored information;

d.      Shall not be disclosed to any non-party, published, or otherwise made public in any form except as permitted in this Order; and

e.      May be disclosed only to the following persons, on an as-needed basis during the course of the Action, with reasonable precautions taken to ensure the confidentiality of the information is protected:

i.      The Parties;

ii.      Counsel who represent a Party in the Action or who are otherwise assisting in or supervising the Action, including attorneys as well as secretarial, clerical, paralegal, legal or student personnel, and any person or entity with whom a Party contracts to reproduce or manage documents;

iii.      Deposition and trial witnesses, counsel for those witnesses, and other witnesses and their counsel whom counsel for a Party in good faith has a reasonable expectation may be a deposition or trial witness in the Action;

iv. A Document's author(s), recipient(s), or copyee(s), or any person or entity whose Sensitive Information or Confidential Information is the subject of the protected material or is otherwise identified by the relevant Document or material;

v. Current and former employees of the producing Party or Protected Person;

vi. Any mediator that the Parties engage in the Action or that the Court appoints;

vii. Independent (non-employee) consultants, expert witnesses, or advisors retained by any Party or counsel for any Party to assist in the preparation and trial of the Action;

viii. The Court, members of the jury, and court personnel, including any Magistrate assigned to the Action, their staff, as well as court reporters or stenographers engaged to record depositions, hearings, or trial testimony, and their employees; and

ix. Such other persons as hereafter may be authorized by either (i) the original producing Party or Protected Person; or (ii) the Court upon motion of any Party.

3. A copy of this Order shall be delivered to each of the named Parties or persons within Paragraph 2(e) above to whom disclosure of Sensitive Information or Confidential Information is made, at or before the time of disclosure, by the Party making the disclosure. The provisions of this Order shall be binding upon each such Party or person to whom disclosure is made.

4. Designation of Sensitive Information:

a.        Sensitive Information is automatically self-designating—no Party or Protected Person need make the designation in order to bring the information within the protections afforded by this Order.

5.        Designation of Confidential Information:

a.        A Party or Protected Person may designate as confidential any Document, Discovery Material, or other information, or any portion thereof, in its possession, custody, or control that it produces or provides to any Party, whether voluntarily or under compulsory process, in connection with the Action, to the extent that such Document or other information contains or constitutes Confidential Information as defined in Paragraph 1(e) above.

b.        A Party or Protected Person seeking to designate any Document that it produces or provides in the Action as Confidential Information must stamp or label the face of each appropriate Document with the designation "CONFIDENTIAL" in a manner that will not interfere with legibility. If the entire Document is not confidential, the Party or Protected Person shall specify the portion(s) of the Document that it asserts contains Confidential Information.

c.        The designation in Paragraph 5(b) above is a certification to the Court that such Party or Protected Person (and counsel, if any) in good faith believes that the Document, Discovery Material, or other information contains or constitutes Confidential Information as defined in Paragraph 1(e) above.

d.        With respect to deposition transcripts, a Party or Protected Person or their counsel may designate such portion as Confidential Information either by (i) indicating on the record during the deposition that a question calls for Confidential Information, in which case the reporter will bind the transcript of the designated testimony (consisting of question and answer and any applicable exhibit) in a separate volume and mark it as "CONFIDENTIAL INFORMATION GOVERNED BY CONFIDENTIALITY ORDER"; or (ii) notifying the reporter and all counsel of

record, by e-mail, within 30 days after a deposition has concluded or 10 days after notice from the court reporter that the transcript has been prepared, whichever is later, of the specific pages and lines of the transcript and/or the specific exhibits that are to be designated sensitive or confidential, in which case all counsel receiving the transcript will be responsible for marking the copies of the designated transcript or exhibit in their possession, custody, or control as directed by the requesting Party or Protected Person. During the 30-day period following the conclusion of a deposition or alternative 10-day period following notice of the preparation of the transcript, the parties will treat the deposition transcript as if it had been designated Confidential Information in its entirety.

6. Challenges by a Party to Designation as Confidential Information:

a. Any Party may, at any time, object and seek to exempt any Document, Discovery Material, or other information, in whole or in part, designated as Confidential Information, from the provisions of this Order. The objecting Party shall notify the designating Party or Protected Person of its objection and shall meet and confer with the designating Party or Protected Person in a good faith effort to resolve the objection by agreement. The Document or Discovery Material shall be treated as Confidential Information and shall remain subject to this Order until the sooner of the following: (i) an agreement by e-mail is reached between the objecting Party and the designating Party or Protected Person; or (ii) 11:59 p.m. Eastern time on the third business day after the designating Party or Protected Person received notice of the objection, if the designating Party or Protected Person has not informed the objecting Party by that time that it intends to maintain the designation.

b. If an agreement by e-mail is not reached, and the designating Party or Protected Person has informed the objecting Party within the time limit set forth in Paragraph 6(a)(ii) above that it intends to maintain the designation, the designating Party or Protected Person shall file a letter motion, under Rule II.B of the Court's Individual Rules, to prevent exemption within five (5) business days of receiving notice of the objection under Paragraph 6(a) above, or within such longer

period as the Court may order or the objecting Party may agree. The designating Party's or Protected Person's letter motion must articulate with particularity the basis for the nondisclosure of the Documents or Discovery Material that the objecting Party has challenged. The objecting Party shall then file a response to the designating Party's or Protected Person's letter motion within three (3) business days as set forth under Rule II.B of the Court's Individual Rules.

c.    Failure of the designating Party or Protected Person either to (i) inform the objecting Party within the time limit set forth in Paragraph 6(a)(ii) above that it intends to maintain the designation, or (ii) timely file the letter motion under Paragraph 6(b) above, shall constitute agreement to exempt the subject Document, Discovery Material, or other information from the provisions of this Order.

7.    Filing of Sensitive Information:

a.    All Sensitive Information that is filed with the Court shall be redacted in accordance with Fed. R. Civ. P. 5.2(a) and Rule II.B.3 of the Court's Individual Rules.

8.    Filing of Confidential Information shall be handled in accordance with Rule II.B.4 of the Court's Individual rules.

9.    Handling CSI:

a.    In addition to the other protections contained herein, which are fully applicable to documents produced to Plaintiff by Silvergate Bank during the investigation preceding this Action ("Silvergate Bank Documents"), all Silvergate Bank Documents which may contain CSI of the FRB or DFPI as defined in their regulations shall be separately designated by the Plaintiff and labeled "CONFIDENTIAL – May contain Federal Reserve or Department of Financial Protection and Innovation Confidential Supervisory Information."

b.    In the event Silvergate Bank Documents are required to be filed with the Court, or the parties are required to refer to or otherwise disclose Silvergate Bank Documents in open

court, the filing or proffering party shall provide the FRB and DFPI with reasonable advance notice in order to provide the FRB and DFPI with an opportunity to designate the Silvergate Bank Documents to be filed or used as CSI and to be heard with respect to a sealing order by the Court pursuant to Rule II.B.4 of the Court's Individual rules.

       c.      In the event the FRB or DFPI designates the Silvergate Bank Documents to be filed or used as CSI, they shall be filed under seal pursuant to Rule II.B.4 of the Court's Individual Rules.

       d.      CSI shall only be used to the extent necessary in connection with this litigation and within the scope of any authorization by the FRB pursuant to 12 C.F.R. § 261.23 or by the DFPI pursuant to Cal. Fin. Code §§ 450, 452, and may not be used for any subsequent litigation or for other purposes without further approval from the FRB and DFPI.

10.      This Order shall not:

       a.      Operate as an admission by any Party that any particular Document, Discovery Material, or other information contains Sensitive Information or Confidential Information;

       b.      Prejudice in any way the right of a Party to seek a Court determination of whether any particular Document, Discovery Material, or other information should be subject to the terms of this Order;

       c.      Prevent a Party's or Protected Person's disclosure of its own Sensitive Information or Confidential Information; or

       d.      Prejudice in any way the right of a Party or Protected Person to apply to the Court for a protective order relating to any Sensitive Information or Confidential Information.

11.      Nothing in this Order shall preclude the Parties from offering Confidential Information into evidence at the trial of the Action or at any other proceeding in the Action, subject to any further orders the Court may enter with respect thereto. As for Sensitive Information, nothing

in this Order shall preclude the Parties from offering it into evidence at the trial of the Action or at any other proceeding in the Action, subject to the restrictions of Fed. R. Civ. P. 5.2(a) and Rule II.B.3 and II.B.4 of the Court's Individual Rules.

12.    Notwithstanding any other provisions contained herein, nothing in this Order shall be construed to limit or otherwise abrogate the SEC's ability to make its files available pursuant to the "Routine Uses of Information" section of SEC Forms 1661 or 1662, to comply with any other statutory or international obligation, or to disclose any Sensitive Information or Confidential Information to the extent otherwise required by law or permitted under Sections 21(a)(2), 24(c), and 24(f) of the Securities Exchange Act of 1934 and Rule 24c-1, promulgated thereunder. Nor shall anything in this Order prevent any Party from producing any material in response to a lawful subpoena or other compulsory process. Any Party that receives a lawful request for information, subpoena, other compulsory process that requires or may require disclosure of a Party's or a Protected Person's Sensitive Information or Confidential Information pursuant to this Protective Order shall notify that Party or Protected Person of the request within five (5) business days so that it may have an opportunity to appear and be heard on whether that information should be disclosed.

13.    The parties further agree that for all documents productions after the date of this Order, the parties will follow the Stipulated Data Delivery Standards, which is attached as Exhibit A to this Order.

14.    The Parties are bound by the provisions herein pending entry of this Order by the Court and further agree that any violation of these provisions before this Order is entered shall be subject to the same sanctions and penalties as if this Order had already been entered.

Dated: January 14, 2026

**STIPULATED BY:**

/s/ *Peter A. Mancuso*
Peter A. Mancuso
Trial Counsel
*Counsel for Plaintiff SEC*

/s/ *Patrick Ashby*
Patrick Ashby
Linklaters LLP
1290 Ave of the Americas
New York, NY 10104
*Counsel for Defendant Martino*

**SO ORDERED:**

_____
HON. STEWART D. AARON
United States Magistrate Judge

Dated: January 15, 2026

# EXHIBIT A

<u>**Stipulated Data Delivery Standards**</u>

This document describes the technical requirements for paper and electronic document productions made by the Parties in the Action.

## General Instructions

The current mailing address for all <u>physical productions</u> sent to the SEC is:

ENF-CPU (U.S. Securities & Exchange Commission), 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750

The current mailing address for all physical productions sent to Antonio Martino is:

Linklaters LLP
1290 Avenue of the Americas
New York, NY 10004

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note: An Adobe PDF file is not considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the Parties will confer to discuss other format options.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and agreed by the Parties. If a production will be de-duplicated, the producing Party must 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of its production to the receiving Party.

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:

   a. Case number, case name and, if the SEC is the receiving Party, the requesting SEC staff member name

   b. A list of each piece of media included in the production with its unique production volume number

c.  The time zone in which the emails were standardized during conversion (to be included in the cover letters accompanying the Parties' initial productions only)

2.  Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:

a.  Case number

b.  Production date

c.  Producing party

d.  Bates range (if applicable)

3.  All submissions must be organized by **custodian** unless otherwise instructed.

4.  All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.

5.  All load-ready collections should include only one data load file and one image pointer file.

6.  All load-ready text must be produced as separate document-level text files.

7.  All load-ready collections should account for custodians in the custodian field.

8.  All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.

9.  Audio files should be separated from data files if both are included in the production.

10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.

11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.

12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip.

13. The Parties will use best reasonable efforts to submit electronic productions of 30 GB or less via Secure File Transfer. For the SEC, all Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload

transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive or Microsoft Office 365.

14. Productions containing BSA or SAR material must be encrypted. Secure File Transfer applications may be used to produce BSA or SAR material. BSA or SAR material should be segregated and appropriately marked as BSA or SAR, or should be produced separately from other case related records.

15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.

16. All electronic productions should be produced free of computer viruses.

17. Before producing forensically collected images, the Parties will confer with each other to discuss appropriate handling.

18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), the Parties will confer with each other to discuss an appropriate production format.

19. Additional technical descriptions can be found in the addendum to this document.

**\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

**Delivery Formats**

I.    **Imaged Productions**

The Parties will use best reasonable efforts to ensure that scanned paper and electronic file collections are produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files. Bates numbers should not contain spaces. Hyphens ( - ) and underscores ( _ ) are acceptable.

1.    **Images**

a.    Black and white images must be 300 DPI Group IV single-page TIFF files

b.    Color images must be produced in JPEG format

c.    File names cannot contain embedded spaces or special characters (including the comma)

d.    Folder names cannot contain embedded spaces or special characters (including the comma)

e.    All image files must have a unique file name, i.e. Bates number

f.    Images must be endorsed with sequential Bates numbers in the lower right corner of each image

g.    The number of image files per folder should not exceed 2,000 files

h.    Excel spreadsheets should have a placeholder image named by the Bates number of the file

i.    AUTOCAD/photograph files should be produced as a single page JPEG file

2.    **Image Cross-Reference File**

The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

3.    **Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the database.

a.   The first line of the .DAT file must be a header row identifying the field names

b.   The .DAT file must use the following *Concordance®* default delimiters:

c.   Comma  ASCII character (020)

d.   Quote þ ASCII character (254)

e.   If the .DAT file is produced in Unicode format it must contain the byte order marker

f.   Date fields should be provided in the format: mm/dd/yyyy

g.   Date and time fields must be two separate fields

h.   The time zone must be included in all time fields

i.   If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments

j.   An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.

k.   For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.

l.   BEGATTACH and ENDATTACH fields must be two separate fields

m.   A complete list of metadata fields is available in **Addendum A** to this document

4.   **Text**

Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters

5

(including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

**5.**    **Linked Native Files**

Copies of original email and native file documents/attachments must be included for all electronic productions.

a.    Native file documents must be named per the FIRSTBATES number

b.    The full path of the native file must be provided in the .DAT file for the LINK field

c.    The number of native files per folder should not exceed 2,000 file

**II.    Native File Production without Load Files**

With notice to the other Party, native files may be produced without load files. Native file productions should not be Bates numbered. Native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. Native email files (.PST or .MBOX) must be separated by custodian.

**III.    Adobe PDF File Production**

With notice to the other Party, Adobe PDF files may be produced in native file format.

1.    All PDFs must be unitized at the document level, i.e. each PDF must represent a discrete document.

2.    PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).

3.    All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.

4.    If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV.    Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media PlayerTM. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file.

The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | Caller Name: | Caller's name or account/identification number |
| 2) | Originating Number: | Caller's phone number |
| 3) | Called Party Name: | Called party's name |
| 4) | Terminating Number: | Called party's phone number |
| 5) | Date: | Date of call |
| 6) | Time: | Time of call |
| 7) | Filename: | Filename of audio file |

## V.    Video Files

Video files must be produced in a format that is playable using Microsoft Windows Media PlayerTM.

## VI.    Electronic Phone Records

When producing an MS Excel spreadsheet for electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).

    a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

## VII.    Electronic Trade and Bank Records

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. The fields and information that must be included are outlined in **Addendum C** of this document.

7

2.      Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. The fields and information that must be included are outlined in **Addendum C** of this document.

## VIII.  Audit Workpapers

The Parties will use best reasonable efforts to ensure that workpapers are produced in two formats: (1) With Bates numbers in accordance with the Stipulated Data Delivery Standards; and (2) in native format via laptop computer, web-based viewing platform, or otherwise, allowing for viewing in the same format and organization as the firm's audit team. Prior to production of workpapers via laptop computer or web-based viewing platform, the Parties will confer for additional information and written agreements addressing use of software, access, and viewing protocols.

## IX.  Mobile Device Data

Before producing any mobile device data (including but not limited to text messages and application data) the Parties will confer to discuss the appropriate production format. Productions containing chat data from applications must be identified at the time of production and the following information must be provided to the receiving Party: chat application, chat data format, and how the length of a chat is determined (i.e. set duration of time, number of minutes without messages, etc.).

**ADDENDUM A**

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email **The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email **This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments **The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender Native: Author(s) of document **semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s) |

| | | **semi-colon should be used to separate multiple<br><br>entries |
|---|---|---|
| CC | Frank Thompson [mailto:frank_Thompson@cdt.com] | Carbon copy recipient(s)<br><br>**semi-colon should be used to separate multiple<br><br>entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br><br>**semi-colon should be used to separate multiple<br><br>entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion. Native: (empty)<br><br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized<br><br>during conversion.<br>Email: Time zone<br>Native: (empty) |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |

| LAST_AUTHOR | Jane Doe | Email: (empty) <br> Native: Last Author of the document |
|---|---|---|
| DATE_CREATED | 10/10/2010 | Email: (empty) <br> Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty) <br> Native: Time the document was created including time <br> zone <br> **This data must be a separate field and cannot be <br> combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty) <br> Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty) <br> Native: Time the document was last modified including <br> the time zone <br> **This data must be a separate field and cannot be <br> combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty) <br> Native: Date the document was last accessed |
| TIME_ACCESSD/T IME_ZONE | 07:00 PM GMT | Email: (empty) <br> Native: Time the document was last accessed including <br> the time zone <br> **This data must be a separate field and cannot be <br> combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty) <br> Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |

11

| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty) Native: Path where native file document was stored including original file name. |
|---|---|---|
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name. Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID Native: (empty) |
| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From:  Taylor  Evans <example_to@mail.dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1)<br><br>Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To:    Jon    Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |

| SHA256 | AD6128C5CA40164AF71A1E FC800E12D2F195CE07BB5F8 C813B0888A2DDE6A06F | SHA-256 hash value of the document. |
|--------|-----------------------------------|----------------------------------|
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

## Sample Image Cross-Reference File:

IMG0000001,,E:\001\IMG0000001.TIF,Y,,,

IMG0000002,,E:\001\IMG0000002.TIF,,,,

IMG0000003,,E:\001\IMG0000003.TIF,,,,

IMG0000004,,E:\001\IMG0000004.TIF,Y,,,

IMG0000005,,E:\001\IMG0000005.TIF,Y,,,

IMG0000006,,E:\001\IMG0000006.TIF,,,,

**ADDENDUM B**

For Electronic Phone Records, include the following fields in separate columns:

## For Calls:

1.    Account Number

2.    Connection Date – Date the call was received or made

3.    Connection Time – Time call was received or made

4.    Seizure Time – Time it took for the call to be placed in seconds

5.    Originating Number – Phone that placed the call

6.    Terminating Number – Phone that received the call

7.    Elapsed Time – The length of time the call lasted, preferably in seconds

8.    End Time – The time the call ended

9.    Number Dialed – Actual number dialed

10.    IMEI Originating – Unique id to phone used to make call

11.    IMEI Terminating– Unique id to phone used to receive call

12.    IMSI Originating – Unique id to phone used to make call

13.    IMSI Terminating- Unique id to phone used to receive call

14.    Call Codes – Identify call direction or other routing information

15.    Time Zone – Time Zone in which the call was received or placed, if applicable

## For Text Messages:

1.    Account Number

2.    Connection Date – Date the text was received or made

3.    Connection Time – Time text was received or made

4.    Originating Number – Who placed the text

5.    Terminating Number – Who received the text

6.    IMEI Originating – Unique id to phone used to make text

7.    IMEI Terminating– Unique id to phone used to receive text

8.    IMSI Originating - Unique id to phone used to make text

9.    IMSI Terminating- Unique id to phone used to receive text

14

10.    Text Code – Identify text direction, or other text routing information

11.    Text Type Code – Type of text message (sent SMS, MMS, or other)

12.    Time Zone – Time Zone in which the call was received or placed, if applicable

## For Mobile Data Usage:

1.    Account Number

2.    Connection Date – Date the data was received or made

3.    Connection Time – Time data was received or made

4.    Originating number – Number that used data

5.    IMEI Originating – Unique id of phone that used data

6.    IMSI Originating - Unique id of phone that used data

7.    Data or Data codes – Identify data direction, or other data routing information

8.    Time Zone – Time Zone in which the call was received or placed, if applicable

**ADDENDUM C**

For electronic account transaction data in MS Excel spreadsheet file format, or in a delimited text file format with a preferred vertical bar delimiter, include the following (or similar) fields of information in **columnar form** and in **separate tabs** of the spreadsheet/delimited text file:

A.    **Account Information Tab**

Listing of accounts produced showing the following:

1.    Account Title

2.    Account Address

3.    Account Number

4.    Account Type

5.    Taxpayer Identification #

6.    Account Open Date

7.    Account Closed Date

8.    Account Owners/Signatories

9.    Relationship (e.g., CEO, CFO, officer, treasurer, founding member, account owner, etc.)

B.    **Account Transaction Information Tab**

Download of transaction data for all accounts produced showing the following:

1.    Account Number

2.    Transaction ID #

3.    Transaction Type (e.g., deposit, withdrawal, check, incoming wire, outgoing wire, ACH transaction, account transfer, account fee, cashiers check, etc.)

4.    Transaction Post Date

5.    Transaction Date

6.    Transaction Amount

7.    Transaction Amount Code (e.g., debit or credit)

8.    Check#

9.    Transaction Description (e.g., payor/payee of transaction, name of merchant/business or individual receiving or depositing funds, etc.)

10.    Account Balance

16

**C.**   **Detail Information Tab for Wire Transfers, ACH Transactions, and Other Bank/Account Transfers**

Download of additional information concerning any of the transactions in Section B, related to any wire transfer, ACH

transaction, and other bank/account transfer transaction information showing the following or similar information:

1.   Account Number

2.   Transaction Reference #

3.   Transaction Date (date that transaction posts to an account)

4.   Transaction Type (e.g., incoming/outgoing wire, incoming/outgoing ACH transaction, incoming/outgoing other bank/account transfer, etc.)

5.   Transaction Amount

6.   Transaction Amount Code (e.g., debit or credit)

7.   Originator Name

8.   Originator Address

9.   Originator ID / Bank Acct# (bank account# of the debit/payor side of the wire)

10.   Beneficiary Name

11.   Beneficiary Address

12.   Beneficiary ID / Bank Acct# (bank account# of the credit/payee side of the wire)

13.   Debit ID (bank name and address for debit/payor side of transaction)

14.   Credit ID (bank name and address for credit/payee side of transaction)

15.   Originator to Beneficiary Information

16.   Bank to Bank Instruction

17.   Other available wire transaction information captured by bank that is not referenced above

**D.**   **Legend Tab**

Listing of any codes used or contained in the information provided above.

---

17