# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

U.S. SECURITIES AND EXCHANGE
COMMISSION,

              **Plaintiff,**

      -against-

ANTONIO MARTINO,

           **Defendant.**

24 Civ. 4987 (ALC) (SDA)

---

**DECLARATION OF HAYDEN M. BROCKETT IN SUPPORT OF PLAINTIFF'S**
**OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY**

I, Hayden M. Brockett, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am an attorney admitted *pro hac vice* to appear as counsel for Plaintiff, U.S. Securities and Exchange Commission ("SEC"), in the above-captioned action. I am trial counsel in the SEC's Division of Enforcement, working in the SEC's New York Regional Office, and have been so employed since May 2023.

2.      I submit this declaration in support of the SEC's Opposition to Defendant Martino's Letter Motion to Compel Discovery (the "Motion"), D.E. 72.

3.      I have personal knowledge of the facts and circumstances presented in this declaration based upon my representation of the SEC in this action.  As counsel for the SEC, I have conducted meet-and-confers with counsel for Defendant Antonio Martino ("Martino") and participated in the SEC's preliminary search in response to Martino's Third Request for Production ("RFP No. 3").

4.      I have reviewed RFP No. 3, which calls for "[w]ithout limitation as to the applicable time period, all Documents and Communications (including drafts) related to" three public

1

statements made by SEC staff (the "Public Statements"), one of which was published in March, 2005 and two of which were published in late 2008.

5.     During the parties' meet-and-confers, while the SEC indicated that it objected to RFP No. 3 on relevance and burden grounds, the SEC told Martino it would take steps to assess the burden associated with searching the SEC's files for responsive materials. To aid in resolving this dispute, the SEC inquired whether Defendant Martino would agree to limit RFP No. 3 by a specific date range, SEC custodian, or external party. Martino declined.

6.     Accordingly, I have sought to identify categories of potentially responsive SEC records, from the entire agency, from at least January 1, 2005 (the year of the first Public Statement) through the present, a period of over 21 years.

7.     In my experience at the SEC, the agency is organized into offices of the Chairman and Commissioners (each of whom has their own staff), Divisions, Offices, and Regional Offices. There are at present six Divisions, 23 Offices, and 11 Regional Offices, although it is my understanding that there have been different numbers of Divisions, Offices, and Regional Offices at various points in the past 21 years.

8.     To identify areas of potentially responsive documents, I have consulted with approximately 18 individuals currently employed at the SEC.

9.     Based on my consultations with other SEC staff, it is my understanding that the Public Statements themselves and copies of associated public comments are publicly available on the SEC website. I have also been informed that the original versions of public comments have likely been sent to the National Archives and Records Administration ("NARA"), pursuant to SEC retention policies, because they are greater than 15 years old. It is my understanding that additional responsive records may have also been sent to NARA because they are more than 15 years old and that retrieving records from NARA may involve manual searches.

10.     To date, based on a review of the Public Statements themselves, of SEC records, and information provided to me by other SEC employees and contractors, I have preliminarily identified approximately 83 individuals whose custodial files may contain potentially responsive records, along with at least two automated email inboxes. This number has changed over the course of these preliminary searches, and I expect it will continue to grow. Most of these potential custodians have left the SEC.

11.     I believe that, in addition to the 83 potential individual custodians, there may be an unknown number of additional Commissioners, Directors, and employees whose custodial files may contain records potentially responsive to RFP No. 3, but whose identities can be learned only after a manual review is conducted on at least the 83 individuals' files.

12.     It is my understanding that the SEC's access to emails sent or received before January 1, 2008 is limited. Because of a transition to a different system as of that date, I have been informed that emails from before January 1, 2008 may require additional, specialized searches and may no longer exist in many instances.

13.     Although the list of potential custodians is still preliminary, I have asked SEC employees and contractors to attempt to identify the scope and size of the Microsoft Outlook data ("Outlook data") for those potential custodians. As described in part below, the Outlook data is not the sole source of potentially responsive records.

14.     Due to the 21-year time span of RFP No. 3, the Outlook data identification process requires searching across at least three different data management systems. Each of these three systems includes records from different timeframes that sometimes overlap.

15.     Because of the age of the records sought, the fact that many potential custodians have left the SEC, and the volume of data to be searched and identified, it has not yet been possible to fully determine whether custodial files still exist for all 83 identified individuals.

16. As of the date of this declaration, the SEC IT staff has been able to identify Outlook data in one of the three systems described above for 72 of the 83 potential individual custodians. I understand that for these 72 potential individual custodians, this system contains approximately 5.2 million items that take up approximately 469 gigabytes of data.

17. I understand from SEC IT staff that due to unrestricted date range in RFP No.3, the large number of potential individual custodians, and other technical factors, the searches for Outlook data in the other two systems are not yet complete. It is my understanding, however, that records of approximately 18 of the 83 potential individual custodians returned at least approximately 27 million hits in the second system and at least approximately 828,000 hits in the third system. I have been informed that the data volume of the records for these 18 potential individual custodians cannot yet be estimated without extracting the data itself.

18. Based on these preliminary searches, and subject to the limitations described above, it is my understanding that the volume of Outlook data presently identified to be searched for materials potentially responsive to RFP 3 No. is approximately 33 million individual items (*e.g.* emails, attachments, or contacts), although it is likely that there is significant duplication among the three systems, due to the manner in which data was captured and stored.

19. In addition, I am aware that certain shared storage drives may have existed for the 83 custodians, as well as the Chairmen, Commissioners, Offices, Divisions, or other groups of SEC employees, and that the systems containing such files have changed significantly in the past 21 years.

20. Based on the information provided to me, I understand that only a small portion of such shared storage drives are available to be searched by keywords and that this small portion likely only comprises comparatively recent files. I have been informed that identifying certain shared network drives that are not searchable would require manual searches of existing files to determine whether specific shared drives exist, and even then this process may not identify certain shared

4

storage drives of individuals who have left the SEC.

21.    I understand that once identified, each of the datasets described above (*i.e.*, the files sent to NARA, the Outlook data, and shared drives) would need to be loaded into a review platform for deduplication and potential review using keyword searches. Once keyword search reviews are completed, manual review of Outlook data and other records would then be required to assess relevance and privilege.

22.    As of the date of this declaration, I am not able to represent that the information identified thus far is complete, and I know that the searches SEC staff has undertaken in response to RFP No. 3 are not exhaustive, in part because of the extensive manual review process that would be required to conduct an exhaustive search.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  March 16, 2026                          By:      */s/ Hayden M. Brockett*
New York, NY                                              Hayden M. Brockett