# Linklaters

Linklaters LLP
601 Thirteenth Street N.W.
Suite 400 South
Washington, D.C. 20005
Telephone (+1) 202 654 9200
Facsimile (+1) 202 654 9210

**VIA ECF**                                                                      March 19, 2026

Honorable Stewart D. Aaron
United States District Court, Southern District of New York
500 Pearl Street, Room 1970
New York, New York 10007

*Re: SEC v. Silvergate Capital Corporation, et al., No. 24 Civ. 4987 (ALC) (S.D.N.Y.)*

Dear Judge Aaron:

Your Honor's Individual Practices state not once, but *twice*, that attachments to discovery motion letters "should be kept to a minimum." The SEC instead elected to submit 346 pages of exhibits, including not one, but *two* declarations, one of which purports to be an "expert witness" qualified to opine on everything from the "[h]istory of OTTI [g]uidance" to the legal "[r]elevance of [d]iscussion" in the materials Mr. Martino seeks. D.E. 75-5 at 4, 9. Despite the considerable ink spilled, the SEC fundamentally raises just two objections[1]: (1) the Public Statements are irrelevant because they predate a 2009 amendment to the OTTI standard (the "2009 Amendment"), and (2) the request is disproportionate to the needs of the case. *See* D.E. 75 at 2–3. Neither objection withstands scrutiny. The SEC's relevance arguments mischaracterize both the scope of the 2009 Amendment and the nature of Mr. Martino's defense, while its burden arguments rest entirely on details that the SEC never disclosed in any of the parties' three meet-and-confers— details Mr. Martino is prepared to engage with cooperatively to minimize any legitimate burden.

## I.     The SEC's Public Statements Remain Relevant After the 2009 Amendment

Despite the submission of an expert report, the threshold question today is relevance, not admissibility, credibility, or weight—and the burden is low. *See W. Union Tel. Co. v. MCI Commc'ns Corp.*, No. 85 CIV. 5800 (CBM), 1986 WL 2769, at *2 (S.D.N.Y. Feb. 26, 1986) (relevance standard for discovery "is a very liberal one").

### a.   The 2009 Amendment Does Not Diminish The Public Statements' Applicability

The SEC's response letter (the "Response," D.E. 75) argues that the Public Statements are irrelevant because they concern pre-2009 OTTI guidance "repealed" by the 2009 Amendment, which the SEC characterizes as "a substantial change that resolved industry difficulties with OTTI accounting." D.E. 75 at 2. This characterization is inaccurate for at least two reasons.

First, the SEC overstates the 2009 Amendment's scope and impact. Far from a "substantial change," the Amendment was a modest refinement to existing guidance, merely shifting the direction of inquiry for OTTI accounting judgments from "intent and ability to hold" a security to "intend to sell" or "more likely than not be required to sell" a security. Ex. A ¶ 13. While the SEC claims the Amendment "for the first time, defined how the industry was to determine OTTI," D.E.

---

[1]   The SEC abandons one of the two arguments it raised during conferral – that "its statements are irrelevant because they relate to OTTI *value*, while the Complaint purportedly alleges that Mr. Martino misrepresented the OTTI *process*." D.E. 72 at 3.

75 at 2, the SEC's own expert confirms that the 2009 Amendment made existing guidance "more operational"—not that it created new OTTI standards from nothing.  *See* D.E. 75-5 ¶¶ 27–31.[2]

Second, the Public Statements fundamentally address the inherent challenges in conveying forward-looking OTTI accounting judgments in periods of financial stress—irrespective of the precise contours of the OTTI accounting guidance—and those circumstances remain unchanged in post-2009 distressed environments.  Ex. A ¶ 14.  Specifically, management still must exercise judgment as to the sale of securities, considering future liquidity needs and alternative sources available to satisfy those needs, which is particularly fraught in times of uncertainty.  *Id*.  And because the 2008 financial crisis was the most recent event causing the SEC to provide extensive OTTI commentary, the Public Statements are utilized by "auditors and other accounting professionals" when they "consider, assess, and evaluate OTTI accounting during a liquidity or other economic crisis" to this day.  *Id.* ¶ 24.

### b.  The SEC's Remaining Relevance Objections Lack Merit

The SEC's remaining relevance objections similarly fail.  First, the SEC argues that the Public Statements are irrelevant to scienter because the "ultimate issue"[3] is whether Mr. Martino "intentionally disregarded" the GAAP standard, D.E. 75 at 2–3, but the test for relevance is much broader than the ultimate issue of a case.  *See* Fed. R. Civ. P. 26(b)(1) (a party may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *Carambot v. New York City Health and Hosps. Corp.*, No. 24-CV-841 (JPO) (BCM), 2026 WL 99994, at *1 (S.D.N.Y. Jan. 13, 2026) (commenting that "the Rule 26(b)(1) standard presents a relatively low threshold") (internal citations omitted).[4]  Moreover, the SEC mischaracterizes its own Complaint, which alleges that Mr. Martino "knew or recklessly disregarded" the standard—a much broader formulation than "intentionally disregarded." *Compare* D.E. 75 at 2–3, *with* D.E. 1 ¶¶ 217-251.  Recklessness requires an "extreme departure from the standards of ordinary care," *In re Carter-Wallace, Inc., Sec. Litig*., 220 F.3d 36, 39 (2d Cir. 2000), and the SEC's public acknowledgments of OTTI's complexity bear directly on what ordinary care requires—regardless of whether Mr. Martino was aware of those acknowledgments. *See SEC v. Kovzan*, No. 11-2017-JWL, 2012 WL 4819011, at *4 (D. Kan. Oct. 10, 2012).  The Public Statements are thus relevant to scienter, in addition to falsity and materiality.[5]  *See* D.E. 72 at 2-3.

---

[2]  The SEC's suggestion that OTTI determinations that were challenging pre-2009 are no longer challenging following the 2009 Amendment is simply wrong.  Ex. A ¶ 21.  The SEC's only support for this self-serving position is the view of "some respondents" during a 2016 comment process, which is not authoritative guidance, and on its face does not relate to determinations by management in a liquidity crisis like Silvergate's.  *Id*. ¶ 25.

[3]  The Court in *Radio Music License Comm., Inc. v. Broadcast Music, Inc.*, on which the SEC relies, referred to the "ultimate issue" as a case-specific observation, not the test for relevance under Rule 26.  347 F.R.D. 269, 273 (S.D.N.Y. 2024).

[4]  Indeed, RFP 3 seeks, and may yield, relevant evidence beyond the face of the Public Statements themselves—such as drafts, communications, and underlying materials that may identify how the SEC regularly applies (or does not apply) these principles; communications with the FASB (or others) about these issues; or internal analyses on OTTI that postdates the Public Statements.

[5]  The SEC's only rebuttal argument on relevance is that its Public Statements predate the 2009 Amendment.  The SEC does not address Defendant's arguments as to *why* the Public Statements are relevant to scienter, falsity, and materiality, *see generally* D.E. at 2-3, and therefore concedes these points.  *McNeil-PPC, Inc. v. Perrigo Co*., No. 05 Civ. 1321(WHP), 2007 WL 81918, at *12 n.4 (S.D.N.Y. Jan. 12, 2007) ("[Defendant] ignores Plaintiffs' contention and, therefore, the argument is deemed conceded.").

Second, the SEC contends that the third Public Statement in RFP 3 is irrelevant because it "largely concerned 'fair value' accounting." D.E. 75 at 3. This contention is false. The language Mr. Martino quotes—that "fair value measurement and the assessment of impairment may require significant judgments"—expressly references "the assessment of impairment" and appears within an OTTI-specific section of the SEC's Exhibit D. *Compare* D.E. 75-1 at 12 *with* D.E. 75-4 at 2–3.

Third, the SEC argues that its Public Statements "cannot undermine the SEC's credibility" because they "concerned long-repealed guidance that was inapplicable to Martino's conduct." D.E. 75 at 3. But that argument assumes the 2009 Amendment eliminated the difficulties the SEC acknowledged—the very premise Section I(a) herein refutes. In *SEC v. Goldstone*, the court permitted discovery of the SEC's own admissions about the difficulty of predicting market downturns to "undermine the credibility of the SEC's … assertions." No. CIV 12-0257 JB/LFG, 2014 WL 4349507, at *40 (D.N.M. Aug. 23, 2014). The same logic applies here: the statements reflect the SEC's views on the inherent difficulty of OTTI assessments, views that remain relevant in spite of the 2009 Amendment.

## II.  RFP 3 Is Proportional to the Needs of This Case

The SEC asserts that RFP 3 is "overbroad and unduly burdensome" because it would require collecting 83 custodians' files across three repositories, involving "millions of emails" and retrieval of records from NARA. *See* D.E. 75 at 3; D.E. 75-6 ¶¶ 9, 10, 14–18. Despite three conferrals, the SEC's Response is the first time the SEC has articulated this burden in any detail.

Instead, the SEC made only passing reference to burden during conferrals, suggesting, for example, that Mr. Martino blindly narrow the scope of potential custodians—without any details, such as who was most closely involved with the Public Statements. The SEC ultimately chose to stand on its relevance objections, which it represented as its ultimate position for purposes of compliance with Your Honor's Individual Practices. Mr. Martino did not "decline[]" to "resolv[e] this dispute" by agreeing to limits in scope, D.E. 75-6 ¶ 5; he was never given the opportunity to have an informed discussion, because the SEC never provided pertinent information around the number of potential custodians, the number or location of potentially responsive documents, or the potential drivers of that volume.

Mr. Martino is prepared to engage with any legitimate burden arguments, but that requires the SEC to participate in good-faith discussions. Even without the benefit of conferral, it appears that the SEC has created a straw man position—submitting a declaration that is quick to list quantitatively large numbers (without application of search terms, or other standard limiters), but fails to share any qualitative findings (e.g., who were the primary drafters of the Public Statements, etc.). Certain complaints, such as the requirement to search multiple data management systems, are entirely unsurprising given the time frame in question. OTTI is a relatively esoteric accounting concept, but is at the core of this case. It comes into focus during periods of economic distress, which is why the last time you see sustained and focused commentary from the SEC on this issue correlates with the 2008 financial crisis. Ex. A ¶ 17. While there is a certain degree of burden as a result, it is entirely proportionate, given the important nature of the evidence and its impact on scienter, falsity, and materiality in this case.

Respectfully submitted,

*/s/ Adam Lurie*

Adam Lurie

cc: All parties of record (via ECF)